**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

STINGRAY IP SOLUTIONS, LLC,

        *Plaintiff*,

v.

SIGNIFY N.V.,

        *Defendant*.

Civil Action No. 2:21-cv-00043-JRG

**DEFENDANT'S OPPOSED MOTION TO DISMISS FOR
<u>LACK OF PERSONAL JURISDICTION</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND AND RELEVANT FACTS ...................................................... 2

    A.    Stingray's Allegations ............................................................................. 2

    B.    Relevant Facts Regarding Signify N.V. and Signify NoAC ................................ 3

III.    ARGUMENT ...................................................................................................... 4

    A.    The Relevant Legal Standards Set a High Bar for Subjecting a Foreign Parent Company to Personal Jurisdiction for Acts of Its Subsidiaries ............................ 4

        i.    FRCP Rule 4(k)(1) .................................................................. 5

        ii.    FRCP Rule 4(k)(2) ................................................................. 5

        iii.    General Personal Jurisdiction ................................................. 6

        iv.    Specific Personal Jurisdiction .................................................. 6

        v.    Jurisdictional Contacts through an Alter Ego ........................... 7

    B.    Neither Signify NoAC, Nor Its Subsidiaries, Are the Alter Egos or Agents of Signify N.V. .......................................................................................... 9

    C.    Signify N.V. Is Not Subject to General Jurisdiction Here ................................. 12

    D.    Signify N.V. Is Not Subject to Specific Jurisdiction Here ................................. 13

    E.    FRCP 4(k)(2) Jurisdiction Does Not Apply Here ................................................ 15

IV.    CONCLUSION .................................................................................................. 15

## Table of Authorities

**Cases**

*Asashi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987) ........................................................................................... 7

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018) ....................... 17

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017) ....................................................................................... 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................... 8

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015) ........................................................... 4, 5, 7, 8, 9, 16

*Daimler AG v. Bauman, et al.*, 5
  71 U.S. 117 (2014) .................................................................................. 6, 7, 15

*Elecs. for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) .......................................................................... 7, 16

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
  2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917 (E.D. Tex. Aug. 31, 2016) ......... 11, 13, 14

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
  933 F.3d 1302 (Fed. Cir. 2019) ........................................................................... 6

*Good Sportsman Marketing LLC v. Li & Fund Ltd.*,
  No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 (E.D. Tex. May 12, 2010) ........................ 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................................................... 6

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) .................................................... 1, 8, 9, 10, 11, 12, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ........................................................................................... 6

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................... 5, 6

*Johnston v. Multidata Sys. Int'l Corp.*,
  523 F.3d 602 (5th Cir. 2008) ............................................................................... 5

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
  890 F.3d 995 (Fed. Cir. 2018) ............................................................ 5, 6

*Miles v. Am. Tel. & Tel. Co.*,
  703 F.2d 193 (5th Cir. 1983) ................................................................ 9

*Nuance Communs., Inc. v. ABBYY Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ........................................................... 14

*QR Spex, Inc. v. Motorola, Inc.*,
  507 F. Supp. 2d 650 (E.D. Tex. 2007) ................................................ 11

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) ........................................................... 17

*Seitz v. Envirotech Sys. Worldwide Inc.*,
  513 F. Supp. 2d 855 (S.D. Tex. 2007) .............................................. 9, 10

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) ............................................................. 8

*Taishan Gypsum Co. v. Gross*,
  753 F.3d 521 (5th Cir. 2014) .............................................................. 11

*Wechsler v. Macke Int'l Trade, Inc.*,
  486 F.3d 1286 (Fed. Cir. 2007) ............................................................. 9

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ............................................................................. 8

LEGAL02/40515446v7

Defendant Signify N.V. respectfully moves this Court to dismiss the above captioned case filed by Plaintiff Stingray IP Solutions, LLC ("Stingray") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(2).

## I.      INTRODUCTION

Defendant Signify N.V. is a holding company formed under the laws of the Netherlands. Signify N.V. owns several companies that are involved in lighting technologies. Signify N.V., however, has no contacts with Texas, or the even the United States as a whole, sufficient to create personal jurisdiction in this case. Signify N.V. does not manufacture the Accused Products—or any product for that matter—and does not place or direct the placement of the Accused Products into the stream of commerce. Signify N.V. is simply a Dutch holding company, and absent exceptional circumstances the foreign parent of a subsidiary is not liable for any alleged harm caused by its subsidiaries. Under Fifth Circuit law, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Instead, the injured party can and should sue the domestic entity that caused the alleged harm. For the same reasons that individual stockholders cannot be sued for alleged patent infringement by companies that they own stock in, it is improper to sue Signify N.V. for alleged infringement by other companies that it owns.

Stingray accuses a number of smart lighting products[1] of infringing U.S. Patent Nos. 6,958,986; 6,961,310; and 7,027,426 (collectively, the "Asserted Patents"). These smart lighting

---

[1]      Stingray specifically identifies as accused products the Philips Lighting Smart Wi-Fi LED bulbs, WiZ bulbs (including bulbs, candle bulbs, Reflector & Globe bulbs, and filament bulbs), WiZ Smart Plugs, WiZ LED Strips, WiZ Motion Sensor, WiZmote, WiZ Smart Dimmer, BrightSite smart poles, Philips Hue Bridge, Philips Hue lighting (including bulbs, lightstrips,

products are sold in the United States by Signify North America Corporation ("Signify NoAC") or its subsidiaries.  Signify NoAC and Signify N.V. are distinct and separate legal entities.

Stingray, however, ignores this reality for one purpose: venue shopping. Stingray knows that Signify NoAC—a New Jersey corporation with no place of business in this District—is *not* subject to venue in the Eastern District of Texas. Thus, instead of suing the entity that actually engages in the alleged infringing activity, Stingray is trying to sue an indirect, foreign parent holding company that has no contacts to Texas or the United States. Stingray is engaging in venue shopping and this Court should not endorse Stingray's attempt to circumvent well-established law regarding both personal jurisdiction and venue.

## II.      BACKGROUND AND RELEVANT FACTS

### A.      Stingray's Allegations

Stingray filed the above captioned case against Signify N.V., a Dutch company, on February 8, 2021. (Dkt. No. 1). In its Complaint, Stingray alleges that Signify N.V. infringes the Asserted Patents through its own actions and through the actions of its subsidiaries, namely Signify NoAC. (*Id*. ¶ 42). Stingray specifically asserts that

> Signify [N.V.] is vicariously liable for [the] infringing conduct of Signify [NoAC] (under both the alter ego and agency theories) because, as an example and on information and belief, Signify [N.V.] and Signify [NoAC] are essentially the same company, and Signify [N.V.] has the right and ability to control Signify [NoAC]'s infringing acts and receives a direct financial benefit from Signify [NoAC]'s infringement.

---

recessed lights, ceiling lights, spot lights, path lights, and pendant lights), Philips Interact Pro Gateway, Philips CoreLine Downlight, Philips CoreLine Panel, Philips CoreLine Recessed, Philips CoreLine SlimDownlight, Philips CoreLine Surface- mounted, Philips CoreLine Waterproof, Philips MasterConnect LEDtub EM/Mains T8, PhilipsOCC Sensor IA CM IP42 WH, and Philips UID8450/10 ZGP Switch Dim 2B (collectively, the "Accused Products") as infringing some or all of the Asserted Patents. (*see* Dkt. No. 1 at ¶¶ 43, 60, 77).

(*Id*.).  Notably, Stingray provides no facts that support its alleged "information and belief" that Signify N.V. and Signify NoAC are "essentially the same company," instead providing only a bare recitation of the legal standards it hopes to meet.

Stingray acknowledges that Signify N.V. is a company organized under the laws of the Netherlands, with its principal place of business in the Netherlands. (*Id*. ¶ 2). Stingray, however, alleges that Signify N.V. "does business in the U.S., the state of Texas, and in the Eastern District of Texas" through its subsidiaries Signify NoAC and WiZ Connected Lighting Company Ltd. ("WiZ"). (*Id*. ¶ 6). As such, Stingray asserts that Signify N.V. is subject to this Court's specific and general jurisdiction because allegedly (1) it conducts infringing activities in this state; (2) it regularly does business in the state "vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers;" and/or (3) "purposefully places infringing wireless lighting devices in established distribution channels in the stream of commerce by contracting with national retailers who sell Signify [N.V.]'s products in the U.S., including in Texas and this judicial district." (*Id*. ¶ 9, 12). In the alternative, Stingray alleges that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2). (*Id*. ¶ 14). To prove this alternative allegation, Stingray must necessarily admit that personal jurisdiction against Signify N.V. in the state of Texas is impossible.  FRCP 4(k)(2)(A).

### B.     Relevant Facts Regarding Signify N.V. and Signify NoAC

Contrary to Stingray's assertions, Signify N.V. is a Dutch holding company that does not control or direct the activities of Signify NoAC or WiZ, which have their own directors and managers. Ex. 1 ¶¶ 6, 12–17. Signify N.V. is a public company that directly or indirectly owns a myriad of companies across the globe involved in lighting technology. Signify N.V. does not itself directly manufacture, design, sell, or offer to sell any products, including the accused products. *Id*. Signify N.V. has no U.S. employees or places of business. *Id*. ¶ 8.

Signify NoAC, which is a Delaware corporation with its principal place of business in New Jersey, is one of Signify N.V.'s indirectly owned subsidiaries. *Id.* ¶ 9. Signify N.V. and Signify NoAC are separate companies and Signify NoAC is not merely an alter ego of Signify N.V. Signify NoAC has its own separate offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observes all corporate formalities. *Id.* ¶¶ 9, 13, 15–17. Unlike Signify N.V., Signify NoAC is an operating company and sells the Accused Products in the United States. *Id.* ¶ 9. Importantly, Signify NoAC does not reside or have any place of business in the Eastern District of Texas. *Id.* ¶ 11.[2]

## III.   ARGUMENT

### A.   The Relevant Legal Standards Set a High Bar for Subjecting a Foreign Parent Company to Personal Jurisdiction for Acts of Its Subsidiaries

As mentioned above, Stingray alleges that Signify N.V. is subject to either general or specific personal jurisdiction under Federal Rule of Civil Procedure Rule ("FRCP") 4(k)(1) or 4(k)(2) based either on its subsidiaries' actions. Federal Circuit law governs personal jurisdiction in patent cases. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Further, the plaintiff bears the burden of proving that a defendant is subject to personal jurisdiction. *Id.* at 1378.

---

[2]   While the discussion in this Motion primarily focuses on the differences between Signify NoAC and Signify N.V., the arguments apply equally to WiZ, or any other direct or indirect subsidiary of Signify N.V. See Ex. 1 ¶¶ 9–17. For example, WiZ is a Hong Kong corporation with its principal place of business in Hong Kong and is one of Signify N.V.'s indirectly owned subsidiaries. *Id.* ¶ 10. Wiz also has its own offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observes all corporate formalities. *Id.* ¶¶ 10, 14–17. Further, Wiz does not have any place of business in the Eastern District of Texas. *Id.* ¶ 11.

*i. FRCP Rule 4(k)(1)*

Under FRCP Rule 4(k)(1), whether a defendant is subject to "personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id*. at 1377. Furthermore, "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). To comport with the limits of due process, the plaintiff must show that the defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted); *see also Celgard*, 792 F.3d at 1377–78.

*ii. FRCP Rule 4(k)(2)*

Under FRCP Rule 4(k)(2), a defendant is subject to personal jurisdiction if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). As opposed to FRCP Rule 4(k)(1), the due process requirement of FRCP Rule 4(k)(2) contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id*. These contacts, under either FRCP Rule 4(k)(1) or 4(k)(2), may give rise to either specific or general personal jurisdiction. *Daimler AG v. Bauman, et al.*, 571 U.S. 117, 138 (2014).

### iii.     General Personal Jurisdiction

General personal jurisdiction applies to a defendant only in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4 (1984). In *Daimler*, the Supreme Court stated that "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there," for example a corporation's place of incorporation or principle place of business are "paradigm all-purpose forums." *Daimler*, 571 U.S. at 137. The Supreme Court has held that the proper test for general jurisdiction is "whether that corporation's affiliations with the State are **so 'continuous and systematic'** as to render [it] **essentially at home** in the forum State." *Id.* at 139 (internal citations and quotations omitted) (emphasis added).

### iv.     Specific Personal Jurisdiction

Specific personal jurisdiction is a claim-specific inquiry that looks to the defendant's claim-related contacts in the forum. *Asashi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 109 (1987); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 137 S. Ct. 1773, 1781 (2017). The Federal Circuit applies a three-prong test in considering if the exercise of specific personal jurisdiction in a given case comports with due process: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard*, 792 F.3d at 1377. Under Federal Circuit law, "[t]he plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement." *Id.* at 1378 (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)). "If the

LEGAL02/40515446v7

plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.* Courts analyze five factors to determine if exercising personal jurisdiction would be unreasonable: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980))).

### v.    *Jurisdictional Contacts through an Alter Ego*

Implicitly recognizing that a foreign parent corporation is not itself subject to the jurisdiction of a state merely because its subsidiary is present or doing business there, Stingray also asserts that Signify N.V. and Signify NoAC (or its subsidiaries) are alter egos, and thus that the actions of Signify NoAC are therefore attributable to Signify N.V. *See* Dkt. No. 1 ¶¶ 9, 42; *cf. Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Only under certain exceptional circumstances is it possible for a third-party's contacts to be imputed to a defendant under an alter ego or agency theory for the purposes of establishing specific personal jurisdiction. S*ee e.g.*, *Celgard*, 792 F.3d at 1379. Since alter ego issues are not unique to patent law, the law of the regional circuit applies. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).

Under Fifth Circuit law, "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.

7

1983). While the Fifth Circuit does recognize that "where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well," it also recognizes that "Texas courts are loathe to merge the separate legal identities of parent and subsidiary unless the latter exists as a mere tool or 'front' for the parent, or the corporate fiction is utilized to achieve an inequitable result, or to conceal fraud or illegality." *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 865 (S.D. Tex. 2007)  (internal citation omitted);*Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983).

The Fifth Circuit has articulated seven factors to consider in deciding if a parent and its subsidiary are alter egos:

> (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters for each entity; (3) the sharing of common officers and directors; (4) the observance of corporate formalities; (5) the maintenance of separate accounting systems;  (6) the parent corporation's exercise of complete authority over the general policy of the subsidiary; and (7) the subsidiary's exercise of complete authority over its daily operations.

*Seitz*, 513 F. Supp. 2d at 865 (citing *Hargrave*, 710 F.2d at 1160); *see also Brooks & Baker*, 2011 U.S. Dist. LEXIS 112568 at *13.

The plaintiff bears the burden of proving that a parent and its subsidiary are in effect alter egos. *Id*. As a rule, a subsidiary is ***not*** an alter ego of a parent unless the Plaintiff demonstrates that the parent and subsidiary do not maintain separate and distinct corporate entities. *Hargrave*, 710 F.2d at 1160. A typical and normal parent-subsidiary relationship is insufficient to establish proof of an alter ego. For example, the Fifth Circuit has stated:

> 100% stock ownership and commonality of officers and directors are ***not*** alone sufficient to establish an alter ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. ***The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship***. All the relevant facts and circumstances surrounding the operations of the parent

and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Id*. at 1160 (internal citations omitted) (emphasis added). In other words, "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become '***so blurred that the two become one***.'" *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917, at *6 (E.D. Tex. Aug. 31, 2016) (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)) (emphasis added). "For an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the agent's dealings with the forum." *Id*. at *5–6 (citing *Taishan Gypsum Co. v. Gross*, 753 F.3d 521, 532 (5th Cir. 2014)).

> **B.**    **Neither Signify NoAC, Nor Its Subsidiaries, Are the Alter Egos or Agents of Signify N.V.**

Stingray has failed to plead facts that, even at a *prima facie* level, would demonstrate that Signify NoAC is Signify N.V.'s alter ego or agent. Nor could they have pleaded such facts, because Signify NoAC and its subsidiaries are all separate and distinct corporate entities from Signify N.V. Ex. 1 ¶¶ 12–17. Signify N.V. is simply a Dutch holding company—it indirectly owns a number of corporations. Ex. 1 ¶¶ 6–7. While it is true that Signify NoAC is a wholly owned indirect subsidiary of Signify N.V., Signify NoAC is its own distinct company. *See Hargrave*, 720 F.2d 1160 ("100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship."). As has been stated, Signify NoAC has its own offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observes all corporate formalities. Ex. 1 ¶¶ 9–11, 12–17. Stingray does not provide any facts in its Complaint—beyond the ownership of Signify NoAC by Signify N.V.—that would show that Signify NoAC is actually Signify N.V.'s alter ego or agent.

The relationship between Signify N.V. and Signify NoAC in this case is that of two distinct and separate corporate entities, similar to the corporations in *Brooks and Baker*. In that case, the Court refused to find a subsidiary to be a mere alter ego of a parent despite the facts that the parent owned 100% of the subsidiary's stock and that the two companies shared a few officers and directors in common. *Brooks & Baker*, 2011 U.S. Dist. LEXIS 112568 at *14. In response to a motion to dismiss, the Court found that the two companies were not alter egos because the parent did not exercise control over the subsidiary's general policy or daily operations, the two companies had separate headquarters, had separate accounting systems, observed separate corporate formalities, compiled separate financial statements, and conducted separate board meetings. *Id*.

Similarly, in this case Signify N.V. and Signify NoAC have separate headquarters, separate accounting systems, separate corporate formalities, separate board meetings, and separate finances. Ex. 1 ¶¶ 9–11, 12–17. Furthermore, Signify N.V. and Signify NoAC have no overlap in their directors. Ex. 1 ¶¶ 12–14. Thus, like the corporations in *Brooks & Baker*, Signify N.V. and Signify NoAC are not alter egos.

This case also bears similarities to *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.* In *Fellowship Filtering*, this Court granted the defendant's motion to dismiss under Rule 12(b)(2). *Fellowship Filtering*, 2016 U.S. Dist. LEXIS at *12. In that case the plaintiff tried to argue that personal jurisdiction was proper over the defendant based on the defendant's own actions and based on the actions of entities related to the defendant. *Id*. at *3. In *Fellowship Filtering*, the plaintiff asserted:

> (1) assets were transferred between [the defendant] and the [related entities] for no agreed-to consideration;
> (2) [the defendant] and the [related entities] shared the same controlling member;
> (3) the [related entities] maintained approval authority over any business partnership of [the defendant];
> (4) the [related entities] approved budget requests made by [the defendant];

10

(5) the [related entities] hold[] out [the defendant] as being part of a tightly integrated [group];

(6) [the defendant] employees gave presentations in which they identified themselves as being part of the [related entities];

(7) the [] entities operate as a single unit and each of the [] entities act as an agent of the other [] entities; and

 (8) the [related entities] exercises control over [the defendant].

*Id*. at *10–11. This Court, however, refused to impute the related entities' actions to the defendant, instead finding that all the above support put forward by the plaintiff demonstrated "***nothing more than a typical parent-subsidiary corporate relationship***." *Id*. at *11–12 (emphasis added). This Court held that generalized and "conclusory statements, without more, do not counsel in favor of disregarding the corporate form." *Id.* at *12–13. Similarly, Stingray's assertions in its Complaint are nothing more than generalized conclusory statements that demonstrate "nothing more than a typical parent-subsidiary corporate relationship" between Signify N.V. and Signify NoAC. If anything, Signify N.V.'s relationship with Signify NoAC and its subsidiaries are even more attenuated than those present in *Fellowship Filtering* at least because additional operating companies lie between the operations of Signify NoAC and Signify N.V. Ex. 1 ¶¶ 9–10.

Further, this case is distinguishable from cases like *Nuance Commc'ns., Inc. v. ABBYY Software House*. In *Nuance*, the Federal Circuit found that a U.S. subsidiary of an international corporation was simply an alter ego for that international corporation because the international corporation shipped the accused products to the U.S. subsidiary, both companies were commonly owned by a separate company, and the companies did not transact at arms-length. *Nuance Commc'ns., Inc. v. ABBYY Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010). Signify N.V., however, unlike the international corporation in *Nuance* does not produce anything. Ex. 1 ¶ 7. Further, Signify N.V. does not control Signify NoAC. *Id.* ¶¶ 9–11, 12–17. Signify N.V. is a holding company that simply indirectly owns Signify NoAC. *Id.* ¶¶ 7, 9–11, 12–17. This is not a case where Signify N.V. exercises such a level of control over Signify NoAC or its subsidiaries that the

11

two corporations essentially fuse together into one. *See Hargrave*, 710 F.2d at 1161. Nor is it the case where Signify N.V. controls Signify NoAC to such an extent as to make Signify NoAC its agent.

If Stingray desires to sue Signify NoAC for allegedly infringing the Asserted Patents, then Stingray should have sued Signify NoAC in a proper venue as opposed to trying to circumvent venue law by suing an attenuated parent corporation just because it happens to be a foreign corporation.

## C.      Signify N.V. Is Not Subject to General Jurisdiction Here

Signify N.V.'s contacts with this jurisdiction, or the United States as a whole, are not "so 'continuous and systematic' as to render [it] essentially at home in the forum." *See Daimler*, 571 U.S. at 139. Stingray pleads only conclusory statements that Signify N.V. does substantial business in this State without supporting facts. As has been repeatedly stated, Signify N.V. is a holding company that does not manufacture or sell anything. Ex. 1 ¶ 6–7. Further, Signify N.V. is not incorporated, nor registered to do business, in any state—it is a Dutch holding company organized under the laws of the Netherlands and headquartered there. Ex. 1 ¶¶ 6–8. Signify N.V. is not at home in this forum or in the United States as a whole and it would be unfair to subject it to general personal jurisdiction.

Stingray attempts to cure this failing by alleging that Signify NoAC's actions open it to general personal jurisdiction in this state and that its actions can be imputed to Signify N.V. However, for the reasons stated above, Signify NoAC is not Signify N.V.'s alter ego nor its agent,

LEGAL02/40515446v7

and thus this Court need not decide whether Signify NoAC would be subject to general personal jurisdiction here.[3]

### D.      Signify N.V. Is Not Subject to Specific Jurisdiction Here

Signify N.V.'s contacts, if any, with this forum, or the United States as a whole, are not related to the claims of this case. Under Federal Circuit law, the plaintiff bears the burden of affirmatively establishing (1) whether the defendant purposefully directed its activities at residents of the forum state and (2) whether the claim arises out of or relates to the defendant's activities with the forum state. *Celgard*, 792 F.3d at 1377–78. In this case, Stingray has failed to meet that burden for either prong.

Stingray asserts that specific personal jurisdiction is proper in this case because it nakedly alleges that (1) Signify N.V. conducts infringing activities in Texas, (2) Signify N.V. purposefully places the alleged infringing goods into the stream of commerce, and (3) Signify NoAC's and Signify NoAC's subsidiaries' actions can be imputed to Signify N.V.

Stingray's unsupported conclusions, however, fail in this case. First, as has been discussed, Signify N.V. does not conduct any business activities—let alone alleged "infringing activities"— in Texas or in the United States as a whole. *See* Ex. 1 ¶¶ 6–8. Signify N.V. does not manufacture, design, sell, or offer to sell any products. *Id.* ¶ 7. To the extent Signify N.V. conducts any business activities, it does so in the Netherlands, where it is incorporated and where its principal place of business is located. *Id.* ¶ 6. Second, Signify N.V. and Signify NoAC and its subsidiaries are wholly

---

[3]    In any event, Signify NoAC—a Delaware corporation—has no place of business in this District and venue would be improper against it regardless of whether personal jurisdiction was proper.

It is also worth noting that the Federal Circuit generally speaks of imputing the contacts of a third-party under an alter ego or agency theory in regard to ***specific*** personal jurisdiction, not general personal jurisdiction. *See e.g.*, *Celgard*, 792 F.3d at 1379 ("For purposes of ***specific personal jurisdiction***, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory.") (emphasis added).

separate legal entities. *See* Section II. B. above. As has been shown, Signify N.V. does not exercise the control and ownership necessary over Signify NoAC or its subsidiaries for their contacts to be imputed to Signify N.V. under either an alter ego or agency theory. *Id*. If Stingray wanted to sue a party over the alleged infringing activities of Signify NoAC or its subsidiaries, then Stingray should have sued Signify NoAC or its subsidiaries in a proper venue, not an international holding company far removed from the conduct at issue.

Third, Signify N.V. does not purposefully place the alleged infringing goods into the "stream of commerce." Signify N.V. is a Dutch holding company that does not itself produce or sell anything. Ex. 1 ¶¶ 6–7. The Federal Circuit has clearly held that "the 'stream of commerce' theory is ***inapplicable***" where a defendant does not manufacture nor exercise control over the manufacture of the accused products. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (emphasis added); *see, e.g., B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 U.S. Dist. LEXIS 220294 at *12–13 (E.D. Tex. Nov. 30, 2018) (finding no personal jurisdiction over a foreign company that did not manufacture or distribute the products at issue); *Good Sportsman Mktg. LLC v. Li & Fund Ltd.*, No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 at *9–10 (E.D. Tex. May 12, 2010) ("Where a defendant does not manufacture the accused product and does not otherwise exert control over or consort with other parties to indirectly manufacture or sell the accused product, the stream of commerce theory is inapplicable.").

The facts of this case are nothing like the facts of a normal "stream of commerce" personal jurisdiction case where an operating foreign defendant manufactures the accused products and knowingly sends them specifically into a given forum for the purpose of selling said products to the citizens of said forum. The facts here are closer to the facts in *Red Wing, B/E Aerospace*, and

*Good Sportsman Marketing*—Signify N.V. simply does not produce products and therefore has nothing to add to the stream of commerce. As such, Signify N.V. has no role in putting the accused products into the stream of commerce and is not subject to this Court's specific personal jurisdiction.

### E.     FRCP 4(k)(2) Jurisdiction Does Not Apply Here

Stingray alleges—in the alternative—that personal jurisdiction is proper under FRCP 4(k)(2). While the due process requirements of FRCP 4(k)(2) look at a defendant's contacts with the United States as a whole, the contacts must still comport with due process. As has been shown above, not only does Signify N.V. have insufficient contacts with Texas, it also has insufficient contacts with the United States. Stingray alleges no separate particular facts regarding Signify's alleged contacts with the United States or any other state. As such, Signify N.V. is also not subject to personal jurisdiction under FRCP 4(k)(2).[4]

### IV.     CONCLUSION

For the above reasons, the Court should dismiss this case for lack of personal jurisdiction. Signify N.V. lacks sufficient minimum contacts with Texas and the United States as a whole, and an exercise of jurisdiction over Signify N.V. would offend due process. Stingray knows that Signify NoAC would be the proper entity to sue, but it also knows that venue is not proper against Signify NoAC in this Court since Signify NoAC is not incorporated in Texas and has no place of business in this District. Stingray is ignoring the facts and trying to play games to circumvent established venue law. This Court should not endorse this unconcealed act of venue shopping and should dismiss this case against Signify N.V.

---

[4]     Further, to the extent that this Court finds that Signify NoAC is an alter ego to Signify N.V., then jurisdiction under FRCP 4(k)(2) fails as well because Signify NoAC is incorporated in Delaware and has a principal place of business in New Jersey, and then Signify N.V. would be subject to personal jurisdiction in at least those places. FRCP 4(k)(2)(A); Ex. 1 ¶ 9.

LEGAL02/40515446v7

Dated: May 31, 2021                    Respectfully submitted,

                                                 */s/ Michael J. Newton*
Michael J. Newton (TX Bar No. 24003844)
Brady Cox (TX Bar No. 24074084)
Adam Ahnhut (TX Bar No. 24106983)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Telephone:  214.922.3443
Facsimile:  214.922.3843
Email:  mike.newton@alston.com
Email:  brady.cox@alston.com
Email:  adam.ahnhut@alston.com

Adam Swain
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:  202.239.3300
Facsimile:  202.239.3333
Email:  adam.swain@alston.com

Lauren Griffin
**ALSTON & BIRD LLP**
One South at The Plaza
101 S Tryon St, Suite 4000
Charlotte, NC 28280
Telephone:  704.444.1059
Facsimile:  704.444.1111
Email:  lauren.griffin@alston.com

***Attorneys for Defendant Signify N.V.***

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 31st day of May, 2021.

*/s/  Michael J. Newton*

Michael J. Newton