**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

STINGRAY IP SOLUTIONS, LLC,

                *Plaintiff*,

v.

SIGNIFY N.V.,
SIGNIFY (CHINA) INVESTMENT CO.,
LTD.,
SIGNIFY HONG KONG LIMITED,
SIGNIFY NETHERLANDS B.V., and
SIGNIFY POLAND SP. Z.O.O.,

                *Defendants*.

Civil Action No. 2:21-cv-00043-JRG

**DEFENDANT SIGNIFY N.V.'S OPPOSED MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND AND RELEVANT FACTS .................................................... 4

    A.     The Complaints Filed in this District and in the District of New Jersey ............... 4

    B.     Relevant Facts Regarding Defendants and Signify North America Corporation ... 6

III.   ARGUMENT ..................................................................................................... 7

    A.     The First Amended Complaint Against Signify N.V. Must Be Dismissed for Lack of Personal Jurisdiction .......................................................................................... 7

        1.     The Relevant Legal Standards Set a High Bar for Subjecting a Foreign Parent to Personal Jurisdiction for Acts of Its Subsidiaries ........................ 7

        2.     The Domestic Companies and Other Defendants Are Not the Alter Egos or Agents of Signify N.V. ........................................................................ 12

        3.     Signify N.V. Is Not Subject to General or Personal Jurisdiction Here ..... 14

        4.     FRCP 4(k)(2) Jurisdiction Also Does Not Apply Here ............................ 17

    B.     This Suit Must Be Dismissed For Failure to Join Signify North America Corporation, A Necessary and Indispensable Party .......................................................... 17

        1.     Signify North America Corporation is an Indispensable Party ................ 17

        2.     Signify North America Corporation is Not Subject to Venue in this District .................................................................................................. 20

    C.     The First-to-File Rule Requires Dismissal or Transfer of this Action ................. 22

        1.     The Other Signify Defendants Could Not Have Concluded That They Were Omitted from the Original Complaint by Mistake ......................... 23

        2.     The District of New Jersey is the First-Filed Case and This Dispute Should Be Tried There .................................................................................... 27

IV.    CONCLUSION ................................................................................................ 30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amberwave Systems Corp. v. Intel Corp.*,
  2005 U.S. Dist. LEXIS 30010 (E.D. Tex. Nov. 1, 2005) ........................................................28

*Asashi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987)............................................................................................................9

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-01417-JRG-RSP, 2018 U.S. Dist. LEXIS 220294 (E.D. Tex.
  Nov. 30, 2018) ..................................................................................................................16

*Bayway Lincoln Mercury, Inc. v. Universal Underwriters Ins. Co.*,
  No. H-19-3817, 2020 U.S. Dist. LEXIS 248125 (S.D. Tex. Dec. 4, 2020)......................24, 26

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017)........................................................................................................9

*Brooks & Baker v. Flambeau, Inc.*,
  No. 2:10-cv-146-TJW-CE, 2011 U.S. Dist. LEXIS 112568 (E.D. Tex. Sept.
  30, 2011) ....................................................................................................................11, 13

*Cadle Co. v. Whataburger of Alice*,
  174 F.3d 599 (5th Cir. 1999) ..............................................................................................27

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015)............................................................................8, 9, 10, 15

*Chan v. Brother Int'l Corp.*,
  No. 4:02-CV-1022-A, 2003 U.S. Dist. LEXIS 9040 (N.D. Tex. May 28, 2003) ....................28

*Colida v. LG Elecs.*,
  77 F. App'x 523 (Fed. Cir. 2003) ..........................................................................................1

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................................9, 14

*Dernick v. Bralorne Res., Ltd.*,
  639 F.2d 196 (5th Cir. 1981) ..............................................................................................18

*E-Z-EM, Inc. v. Mallinckrodt, Inc.*,
  No. 2-09-cv-124, 2010 U.S. Dist. LEXIS 31419 (E.D. Tex. Feb. 26, 2010)...........................28

*E.E.O.C. v. Peabody W. Coal Co.*,
  400 F.3d 774 (9th Cir. 2005) ..............................................................................................20

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
 No. 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917 (E.D. Tex. Aug. 31,
 2016) ............................................................................................................12, 13, 14

*Freeman v. Northwest Acceptance Corp.*,
 754 F.2d 553, 559 (5th Cir. 1985) ................................................................18, 19

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*,
 933 F.3d 1302 (Fed. Cir. 2019)..............................................................................8

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
 No. 2:16-cv-00618-RWS-RSP, 2017 U.S. Dist. LEXIS 9971 (E.D. Tex. Jan.
 24, 2017) ...............................................................................................................23

*Good Sportsman Mktg. LLC v. Li & Fund Ltd.*,
 No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 (E.D. Tex. May 12, 2010) ........16

*Goodyear Dunlop Tire Ops. S.A. v. Brown*,
 564 U.S. 915 (2011).........................................................................................5, 9

*GTG Holdings, Inc v. Amvensys Capital Grp., LLC*,
 No. 3:13-cv-3107-M, 2015 U.S. Dist. LEXIS 101370 (N.D. Tex. Aug. 3,
 2015) .....................................................................................................................20

*H.S. Res., Inc. v. Wingate*,
 327 F.3d 432 (5th Cir. 2003) ........................................................................18, 21

*Haas v. Jefferson Nat'l Bank of Miami Beach*,
 442 F.2d 394 (5th Cir. 1978) ................................................................................19

*Hargrave v. Fibreboard Corp.*,
 710 F.2d 1154 (5th Cir. 1983) ..................................................................... *passim*

*Hart v. Donostia LLC*,
 290 F. Supp. 3d 627 (W.D. Tex. 2018)..................................................................27

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984)................................................................................................9

*Innovative Display Techs. LLC v. Microsoft Corp.*,
 No. 2:13-cv-00783-JRG, 2014 U.S. Dist. LEXIS 82429 (E.D. Tex. June 17,
 2014) ........................................................................................................17, 18, 20

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
 665 F.3d 671 (5th Cir. 2011) ................................................................................28

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945)................................................................................................8

*Jacobsen v. Osborne*,
  133 F.3d 315 (5th Cir. 1998) ....................................................................24

*Johnston v. Multidata Sys. Int'l Corp.*,
  523 F.3d 602 (5th Cir. 2008) .....................................................................8

*Kemp Indus. v. Safety Light Corp.*,
  1994 U.S. Dist. LEXIS 21466 (D.N.J. 1994) .......................................25

*Krupski v. Costa Crociere S. p. A.*,
  560 U.S. 538 (2010) ...................................................................................23

*Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*,
  2006 U.S. Dist. LEXIS 91358 (N.D. Ind. 2006) ...................................23

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
  890 F.3d 995 (Fed. Cir. 2018) ..............................................................8, 9

*Mallinckrodt Medical Inc. v. Nycomed Imaging AS*,
  49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) ...................................................22

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012)..................................................................22

*Miles v. Am. Tel. & Tel. Co.*,
  703 F.2d 193 (5th Cir. 1983) ...................................................................11

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*,
  570 F.3d 625 (5th Cir. 2009) ...................................................................18

*Myers v. Broadus*,
  No. 6:16-cv-1130, 2019 U.S. Dist. LEXIS 28260 (E.D. Tex. Feb. 22, 2019).......................25

*In re N. Am. Oil & Gas Co.*,
  130 B.R. 482 (Bankr. W.D. Tex. 1991) ..................................................29

*Nuance Communications, Inc. v. ABBYY Software House*,
  626 F.3d 1222 (Fed. Cir. 2010).................................................................14

*Pergo, Inc. v. Alloc, Inc.*,
  262 F.Supp.2d 122 (S.D.N.Y. 2003).........................................................22

*Priester v. Deutsche Bank Nat'l Tr. Co.*,
  No. 4:16-CV-449, 2017 U.S. Dist. LEXIS 102615 (E.D. Tex. June 30, 2017).......................23

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998)..................................................................16

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997) ................................................................22, 27, 28, 29

*Seitz v. Envirotech Sys. Worldwide Inc.*,
513 F. Supp. 2d 855 (S.D. Tex. 2007) ..................................................................11

*Serco Services Co., L.P. v. Kelley Co., Inc.*,
51 F.3d 1037 (Fed. Cir. 1995)................................................................................22

*Signify N. Am. Corp. v. Stingray IP Solutions*,
No. 3:21-cv-11989 (D.N.J.), ECF No. 1 .....................................................4, 5, 28

*SIPCO, LLC v. Emerson Elec. Co.*,
No. 6:15-cv-907, 2016 U.S. Dist. LEXIS 191202 (E.D. Tex. July 1, 2016) .........28

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
563 F.3d 1285 (Fed. Cir. 2009)..............................................................................10

*Tapp v. Shaw Envtl., Inc.*,
401 F. App'x 930 (5th Cir. 2010) ..........................................................................23

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)............................................................................................20

*In re Telebrands Corporation*,
824 F.3d 982 (Fed. Cir. 2016)................................................................................22

*Tick v. Cohen*,
787 F.2d 1490 (11th Cir. 1986) .............................................................................20

*Timberlake v. Synthes Spine, Inc.*,
No. V-08-4, 2011 U.S. Dist. LEXIS 70894 (S.D. Tex. June 30, 2011)..................18

*In re Toyota Hybrid Brake Litig.*,
No. 4:20-cv-127, 2020 U.S. Dist. LEXIS 194964 (E.D. Tex. Oct. 21, 2020) .......27

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
751 F.2d 721 (5th Cir. 1985) .................................................................................22

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)................................................................................................22

*Winzer v. Kaufman Cty.*,
916 F.3d 464 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 85 (2020)...........................24

*Woodhouse v. Bird Rides, Inc.*,
No. SA-20-CV-01113-XR, 2021 U.S. Dist. LEXIS 93804 (W.D. Tex. May
17, 2021) .................................................................................................................24

**Statutes**

28 U.S.C. § 1400...............................................................................................................20

Defendant Signify N.V.[1] respectfully moves this Court to dismiss the First Amended Complaint filed by Plaintiff Stingray IP Solutions, LLC ("Stingray") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for failure to join indispensable parties under Fed. R. Civ. P. 12(b)(7), and pursuant to the first-to-file rule in view of Signify North America Corporation's declaratory judgment complaint filed in the District of New Jersey.

## I.      INTRODUCTION

In its continued attempt to secure venue in a forum wholly unrelated to the facts of this action, Stingray's First Amended Complaint fails to remedy the deficiencies of its Original Complaint.  On the contrary, it introduces new ones.  Comparison of the parties identified in the First Amended Complaint with the parties actually named as Defendants reveals that Stingray has thrown the proverbial kitchen sink at as many foreign affiliates as it can find—attributing the allegedly-infringing activities of domestic companies to those foreign companies—while conspicuously and deliberately avoiding naming the domestic companies as defendants.  These domestic companies are the alleged alter-egos of Defendants and are the companies that specifically perform the alleged infringing activities in the United States, but Stingray has intentionally omitted them from its Complaints.  This carefully curated list of Defendants nakedly attempts to avoid the venue issues associated with suing the domestic companies in this District in an attempt to secure jurisdiction and venue over only foreign corporations.  However, because there is no personal jurisdiction over Signify N.V., and because the First Amended Complaint fails to join Signify North America Corporation—an indispensable party whose alleged conduct is

---

[1]      This motion to dismiss is brought on behalf of only Signify N.V. On information and belief, Stingray has not served its First Amended Complaint on any other named Defendant.  *See Colida v. LG Elecs.*, Inc., 77 F. App'x 523 (Fed. Cir. 2003) (finding that service on a domestic subsidiary is insufficient to establish jurisdiction over its foreign corporate parent).  Plaintiff presents no evidence or authority to support its arguments that Signify North America Corporation is authorized to accept service for foreign affiliates.

central to Plaintiff's allegations but cannot be joined to this case—this case must be dismissed. Furthermore, because a substantially overlapping lawsuit was filed by Signify North America Corporation in New Jersey before the First Amended Complaint adding new parties was filed in this District, the first-to-file rule also requires dismissal or, alternatively, transfer of this action.

Defendant Signify N.V. is a holding company formed under the laws of the Netherlands. Signify N.V. directly or indirectly owns several companies that are involved in lighting technologies, including each of the Defendants identified in this action. Signify N.V., however, has no contacts with Texas, or even the United States as a whole, sufficient to create personal jurisdiction in this case. Signify N.V. does not manufacture the Accused Products—or any product—and does not place or direct the placement of the Accused Products into the stream of commerce. Signify N.V. is simply a Dutch holding company, and absent exceptional circumstances, the foreign parent of a subsidiary is not liable for any alleged harm caused by its subsidiaries. Under Fifth Circuit law, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Instead, the injured party can and should sue the entity that caused the alleged harm. The First Amended Complaint fails to support any claim that Signify N.V. *itself* ever makes, uses, sells, offers for sale, or imports into the United States any of the allegedly infringing products—only that its indirect subsidiaries do these actions and that their conduct should be attributed to their ultimate parent.

Stingray accuses a number of smart lighting products (the "Accused Products") of infringing its patents. (*See* ECF No. 15, hereafter "First Amended Complaint," ¶¶ 54, 75, 92, 109.) As Stingray acknowledges in its First Amended Complaint, the sales of these smart lighting

products in the United States are made by Genlyte Corporation, Signify North America Corporation, and Cooper Lighting (collectively, the "Domestic Companies"). Stingray, however, intentionally omits these Domestic Companies as named parties in the First Amended Complaint. Because the allegedly infringing activities of Signify North America Corporation are at the heart of the First Amended Complaint and Stingray's theories of Defendants' infringement are inextricably entwined with Signify North America Corporation's conduct, they are a necessary and indispensable party under Fed. R. Civ. P. 19 without which this suit cannot proceed. However, because venue is improper in this District as to Signify North America Corporation (as well as the other Domestic Companies), they cannot be joined to this action and this suit must be dismissed.

Furthermore, after the allegations against Signify N.V. are dismissed, the allegations against all other Defendants must also be dismissed or transferred under the first-to-file rule in favor of the substantially overlapping suit filed by Signify North America Corporation in the District of New Jersey. There is no question that the First Amended Complaint cannot relate back to the original Complaint with respect to the newly added Defendants under Fed. R. Civ. P. 15(c)(1)(C). Further, the District of New Jersey is the first case to which jurisdiction actually attached. As such, this case is the second-filed, and the Court must defer to the decision of the first-filed court as to which action should proceed. There are no compelling circumstances that justify retaining the case in this District. Holding otherwise would result in unnecessary duplication of effort between the two districts and invite potentially inconsistent rulings and obligations with respect to the affected parties.

Stingray ignores each of these realities for one purpose: venue shopping. Stingray knows that the Domestic Companies—which are not incorporated in Texas and have no place of business in this District—are *not* subject to venue in the Eastern District of Texas. Thus, instead of suing

the entities that it identifies as engaging in the alleged infringing activities, Stingray attempts to sue them indirectly by *attributing* their domestic conduct to their legally separate foreign affiliates but fails to actually name the Domestic Companies as Defendants.   Stingray's conduct is transparent.  It is engaging in venue shopping and this Court should not endorse Stingray's attempt to circumvent well-established law regarding both personal jurisdiction and venue to sue in a district unrelated to the activities actually performed by any of the entities it names as Defendants.

## II.      BACKGROUND AND RELEVANT FACTS

### A.      The Complaints Filed in this District and in the District of New Jersey

Stingray originally filed the above captioned case exclusively against Signify N.V., a Dutch company, on February 8, 2021, as well as a companion case that has yet to be joined to this one. (ECF No. 1.)  Stingray attempted service of the original Complaints on Signify N.V. by serving Signify North America Corporation's registered agent in the United States rather than attempting foreign service, but Signify N.V. waived this ineffectual service under Fed. R. Civ. P. 4(d).

On May 31, 2021, Signify N.V. filed substantially identical motions to dismiss in both actions for lack of personal jurisdiction over Signify N.V.  (ECF No. 13.)  On the same day, Signify North America Corporation filed a complaint for declaratory judgment of noninfringement in the District of New Jersey with respect to all patents asserted in both EDTX actions.  *Signify N. Am. Corp. v. Stingray IP Solutions*, No. 3:21-cv-11989 (D.N.J.), ECF No. 1.  On June 14, 2021, rather than respond to Signify N.V.'s motions, Stingray filed a First Amended Complaint in both EDTX actions adding new allegations and new Defendants Signify (China) Investment Co., Ltd.; Signify Hong Kong Ltd., Signify Netherlands B.V.; and Signify Poland SP, Z.O.O.

In its First Amended Complaint, Stingray alleges that each of the Defendants infringe the Asserted Patents through the actions of their subsidiaries, including the Domestic Companies. (First Amended Complaint, ¶ 74.)  Stingray specifically asserts:

> Each Defendant is vicariously liable for this **infringing conduct of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting** (under both the alter ego and agency theories) because, as an example and on information and belief, parent company Signify NV, Defendants Signify China, Signify HK, Signify Netherlands, and Signify Poland, and other subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, are essentially the same company, and the Signify Defendants have the right and ability to control the infringing acts of subsidiaries in the Signify Group, including Signify NA, Genlyte, WiZ, and Cooper Lighting, and the Signify Defendants receive a direct financial benefit from the infringement of those subsidiaries.

(*Id*. (emphasis added).)  This bald allegation of "sameness" is designed to strip away the corporate veil without making any attempt at meeting the strict legal requirements for piercing that veil.  *See Goodyear Dunlop Tire Ops. S.A. v. Brown*, 564 U.S. 915, 930 (2011) (holding that attempts to merge the actions of parents and subsidiaries for jurisdictional purposes is tantamount to "piercing the corporate veil" in the corporate context).

Stingray acknowledges that Signify N.V. is a company organized under the laws of the Netherlands, with its principal place of business in the Netherlands.  (First Amended Complaint, ¶ 2.)  Stingray, however, alleges that Signify "does business in the U.S., the state of Texas, and in the Eastern District of Texas" through its subsidiaries Signify North America Corporation, Genlyte, WiZ, and Cooper Lighting—none of which are named as Defendants.  (*Id*. ¶ 16.)  As such, Stingray asserts that Signify N.V. is subject to this Court's specific and general jurisdiction because, (1) it conducts infringing activities in this state; (2) it regularly does business in the state "vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers;" (3) it is "related to, owns, and/or controls consolidated subsidiaries" that have a presence in Texas; (4) its website "provides links for consumers and professionals to access on-line stores operated by the Signify group;" and/or (5) it "purposefully places infringing wireless lighting devices in established distribution channels in the stream of commerce by contracting with national retailers who sell Signify [N.V.]'s products in

the U.S., including in Texas and this judicial district." (*Id.* ¶ 19, 21-22.)  In the alternative, Stingray alleges that personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2).  (*Id.* ¶ 24.)   To prove this alternative allegation, Stingray must necessarily admit that personal jurisdiction against Signify N.V. in the state of Texas is impossible.  Fed. R. Civ. P. 4(k)(2)(A).

### B.   Relevant Facts Regarding Defendants and Signify North America Corporation

Contrary to Stingray's assertions, Signify N.V. is a Dutch holding company that does not control or direct the activities of its subsidiaries, each of which have their own directors and managers.  Ex. 1 ¶¶ 6, 12–17.  Signify N.V. is a public company that directly or indirectly owns a myriad of companies across the globe involved in lighting technology.  Signify N.V. does not itself directly manufacture, design, sell, offer to sell, or import any products, including the accused products.  *Id.*  Signify N.V. has no U.S. employees or places of business.  *Id.* ¶ 8.

Signify North America Corporation, which is a Delaware corporation with its principal place of business in New Jersey, is one of Signify N.V.'s indirectly owned subsidiaries.  *Id.* ¶ 9.  Signify N.V.'s subsidiaries are not merely alter egos of Signify N.V.  Signify N.V.'s subsidiaries have their own separate offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observe all corporate formalities.  *Id.* ¶¶ 9, 13, 15–17.  Unlike Signify N.V., Signify North America Corporation is an operating company and sells the Accused Products in the United States.  *Id.* ¶ 9.  Importantly, Signify North America Corporation does not reside or have any place of business in the Eastern District of Texas.  *Id.* ¶ 11.[2]

---

[2]     While the discussion in this Motion primarily focuses on the differences between Signify North America Corporation and Signify N.V., the arguments apply equally to WiZ, Genlyte, Cooper Lighting, or any other direct or indirect subsidiary of Signify N.V.  *See* Ex. 1 ¶¶ 9–17.  For example, WiZ is a Hong Kong corporation with its principal place of business in Hong Kong and is one of Signify N.V.'s indirectly owned subsidiaries.  *Id.* ¶ 10.  WiZ also has its own offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observes all corporate formalities.  *Id.* ¶¶ 10, 14–17.  Further, WiZ also does not have any place of

The First Amended Complaint alleges that Signify (China) Investment Co., LTD ("Signify China") is a Chinese corporation with its principal place of business in Shanghai, China. (First Amended Complaint, ¶ 4.) Signify China's alleged ties to the case include the alleged manufacture of the Accused Products that are eventually sold by Signify North America Corporation in the United States, and its application for FCC approval for those products. (*Id.* ¶ 28.)

The First Amended Complaint further alleges that Signify Hong Kong Ltd. ("Signify Hong Kong") is a Hong Kong company with its principal place of business in Hong Kong. (*Id.* ¶ 5.) Signify Hong Kong's alleged ties to the case include the shipment and distribution of the Accused Products that are sold by Signify North America Corporation in the United States. (*Id.* ¶ 33.)

The First Amended Complaint further alleges that Signify Netherlands B.V. ("Signify Netherlands") is a Dutch corporation with its principal place of business in Eindhoven, Netherlands. (*Id.* ¶ 6.) Signify Netherlands's alleged ties to the case include the importation of the Accused Products directly to Signify North America Corporation and authorship of an app whose functionality is unrelated to any of Plaintiff's allegations of infringement. (*Id.* ¶¶ 22, 38.)

The First Amended Complaint further alleges that Signify Poland Sp. z.o.o. ("Signify Poland") is a Polish company with its principal place of business in Warsaw, Poland. (*Id.* ¶ 7.) Signify Poland's alleged ties to the case include the manufacture of the Accused Products and the importation of the Accused Products directly to Signify North America Corporation. (*Id.* ¶ 43.)

## III.   ARGUMENT

### A.  The First Amended Complaint Against Signify N.V. Must Be Dismissed for Lack of Personal Jurisdiction

#### 1.   The Relevant Legal Standards Set a High Bar for Subjecting a Foreign Parent to Personal Jurisdiction for Acts of Its Subsidiaries

---

business in this District. *Id*. ¶ 11. Plaintiff does not allege that any of the named Defendants or Domestic Companies have a place of business in the District or are incorporated in Texas.

As mentioned above, Stingray alleges that Signify N.V. is subject to either general or specific personal jurisdiction under Federal Rule of Civil Procedure Rule ("FRCP") 4(k)(1) or 4(k)(2) based on its subsidiaries' actions under an "alter ego" or "agency" theory. Federal Circuit law governs personal jurisdiction in patent cases. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Further, the plaintiff bears the burden of proving that a defendant is subject to personal jurisdiction. *Id*. at 1378.

### a.   FRCP Rule 4(k)(1)

Under FRCP Rule 4(k)(1), whether a defendant is subject to "personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." 792 F.3d at 1377. Furthermore, "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). To comport with the limits of due process, the plaintiff must show that the defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted); *see also Celgard*, 792 F.3d at 1377–78.

### b.   FRCP Rule 4(k)(2)

Under FRCP Rule 4(k)(2), a defendant is subject to personal jurisdiction if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (citation omitted); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). As opposed to Fed. R. Civ. P. 4(k)(1), the due process

requirement of Fed. R. Civ. P. 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling*, 890 F.3d at 999. These contacts may give rise to specific or general personal jurisdiction under Rules 4(k)(1) or 4(k)(2). *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

### c. General and Specific Personal Jurisdiction

General personal jurisdiction applies to a defendant only in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear*, 564 U.S. at 917 (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). In *Daimler*, the Supreme Court stated that "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there," for example a corporation's place of incorporation or principle place of business are "paradigm all-purpose forums." *Daimler*, 571 U.S. at 137. The Supreme Court has held that the proper test for general jurisdiction is "whether that corporation's affiliations with the State are ***so 'continuous and systematic'*** as to render [it] ***essentially at home*** in the forum State." *Id*. at 138–39 (citations and quotation marks omitted) (emphasis added).

Specific personal jurisdiction is a claim-specific inquiry that looks to the defendant's claim-related contacts in the forum. *Asashi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 109 (1987); *see also Bristol-Myers Squibb Co. v. Super. Ct.,* 137 S. Ct. 1773, 1781 (2017). The Federal Circuit applies a three-prong test in considering if the exercise of specific personal jurisdiction in a given case comports with due process: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard*, 792 F.3d at 1377 (citation omitted). "The plaintiff bears the

burden of affirmatively establishing the first two elements of the due process requirement." *Id*. at 1378 (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)).  "If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id*.  Courts analyze five factors to determine if exercising personal jurisdiction would be unreasonable: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### d.  Jurisdictional Contacts through an Alter Ego

Implicitly recognizing that a foreign parent corporation is not itself subject to the jurisdiction of a state merely because its subsidiaries or affiliates are present or doing business there, Stingray also asserts that each of the Defendants and the Domestic Companies (or other subsidiaries) are all alter egos of each other.  Thus, that the actions by any affiliated company, are therefore attributable to each of the Defendants, including Signify N.V.  (*See* First Amended Complaint ¶¶ 19, 74); *cf. Hargrave*, 710 F.2d at 1159.   Only under certain exceptional circumstances is it possible for a third-party's contacts to be imputed to a defendant under an alter ego or agency theory for the purposes of establishing specific personal jurisdiction.  *See e.g.*, *Celgard*, 792 F.3d at 1379.

"[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave*, 710 F.2d at 1159.  While the Fifth Circuit does recognize that "where the parent totally

controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well," it also recognizes that "Texas courts are loathe to merge the separate legal identities of parent and subsidiary unless the latter exists as a mere tool or 'front' for the parent, or the corporate fiction is utilized to achieve an inequitable result, or to conceal fraud or illegality." *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 865 (S.D. Tex. 2007) (citation omitted); *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983). None of those exceptions apply here.

The Fifth Circuit has articulated seven factors to consider in deciding if a parent and its subsidiary are alter egos:

> (1) the amount of the subsidiary's stock owned by the parent corporation; (2) the existence of separate headquarters for each entity; (3) the sharing of common officers and directors; (4) the observance of corporate formalities; (5) the maintenance of separate accounting systems; (6) the parent corporation's exercise of complete authority over the general policy of the subsidiary; and (7) the subsidiary's exercise of complete authority over its daily operations.

*Seitz*, 513 F. Supp. 2d at 865 (citing *Hargrave*, 710 F.2d at 1160); *see also Brooks & Baker v. Flambeau, Inc.*, No. 2:10-cv-146-TJW-CE, 2011 U.S. Dist. LEXIS 112568, at *13 (E.D. Tex. Sept. 30, 2011).

The plaintiff bears the burden of proving that a parent and its subsidiary are alter egos. *Seitz*, 513 F. Supp. 2d at 865. As a rule, a subsidiary is ***not*** an alter ego of a parent unless the plaintiff demonstrates that the parent and subsidiary do not maintain separate and distinct corporate entities. *Hargrave*, 710 F.2d at 1160. A typical and normal parent-subsidiary relationship is insufficient to establish proof of an alter ego. For example, the Fifth Circuit has stated:

> 100% stock ownership and commonality of officers and directors are ***not*** alone sufficient to establish an alter ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. *The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship*.

> All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Id*. (citations omitted) (emphasis added).  In other words, "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become '***so blurred that the two become one***.'"  *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917, at *6 (E.D. Tex. Aug. 31, 2016) (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)) (emphasis added).  "For an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the agent's dealings with the forum."  *Id*. at *5–6 (citing *Taishan Gypsum Co. v. Gross*, 753 F.3d 521, 532 (5th Cir. 2014)).

### 2.   The Domestic Companies and Other Defendants Are Not the Alter Egos or Agents of Signify N.V.

Stingray has failed to plead facts that demonstrate that the Domestic Companies or other Defendants are Signify N.V.'s (or any other Defendant's) alter egos or agents.  Nor could they have pleaded such facts, because each of the companies within the Signify Group of companies are separate and distinct corporate entities that strictly observe corporate formalities.  Ex. 1 ¶¶ 12–17.  Signify N.V. is simply a Dutch holding company with the typical and ordinary parent-subsidiary relationship the Fifth Circuit has held cannot justify a finding of "alter egos."  While it is true that the Domestic Companies and other Defendants are wholly owned indirect subsidiaries of Signify N.V., each company is its own distinct company.  *See Hargrave*, 710 F.2d at 1160 ("100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship.").  These subsidiaries have their own offices, executives, employees, bank accounts, accounting systems, tax returns, financial statements, and observe all corporate formalities.  Ex. 1 ¶¶ 9–11, 12–17.  Stingray does not provide facts in its First Amended

Complaint—beyond the common ownership of these indirect subsidiaries by Signify N.V.—that would show that these companies are actually Signify N.V.'s alter egos or agents.

The relationship between Signify N.V. and its indirect subsidiaries in this case is that of distinct and separate corporate entities, similar to the corporations in *Brooks and Baker*.  In that case, the Court refused to find a subsidiary to be a mere alter ego of a parent despite the facts that the parent owned 100% of the subsidiary's stock and that the two companies shared a few officers and directors in common.  *Brooks & Baker*, 2011 U.S. Dist. LEXIS 112568, at *14 (finding that the two companies were not alter egos because the parent did not exercise control over the subsidiary's general policy or daily operations, the companies had separate headquarters, accounting systems, corporate formalities, financial statements, and board meetings).

This case also bears similarities to *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2016 U.S. Dist. LEXIS 195917.  In that case the plaintiff tried to argue that personal jurisdiction was proper over the defendant based on the defendant's own actions and based on the actions of related entities, asserting that:

> (1) assets were transferred between [the defendant] and the [related entities] for no agreed-to consideration;
> (2) [the defendant] and the [related entities] shared the same controlling member;
> (3) the [related entities] maintained approval authority over any business partnership of [the defendant];
> (4) the [related entities] approved budget requests made by [the defendant];
> (5) the [related entities] hold[] out [the defendant] as being part of a tightly integrated [group];
> (6) [the defendant] employees gave presentations in which they identified themselves as being part of the [related entities];
> (7) the [] entities operate as a single unit and each of the [] entities act as an agent of the other [] entities; and
> (8) the [related entities] exercises control over [the defendant].

*Id*. at *10–11.  This Court, however, refused to impute the related entities' actions to the defendant, instead finding that all the above support supplied by the plaintiff demonstrated "***nothing more than a typical parent-subsidiary corporate relationship***."  *Id*. at *11–12 (emphasis added).  This

Court held that generalized and "conclusory statements, without more, do not counsel in favor of disregarding the corporate form." *Id.* at *12–13.  Similarly, Stingray's assertions in its Complaint are nothing more than generalized conclusory statements that demonstrate "nothing more than a typical parent-subsidiary corporate relationship" between Signify N.V. and its subsidiaries, including its bald and unsupported allegations that Signify N.V. directly controls the daily operations of each of its subsidiaries around the world.

Further, this case is distinguishable from cases like *Nuance Communications, Inc. v. ABBYY Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010).  Unlike the international corporation in *Nuance*, Signify N.V. does not itself produce, sell, or ship anything. Ex. 1 ¶ 7. Further, Signify N.V. does not control the subsidiaries whose conduct Stingray attempts to impute to Signify N.V.  *Id.* ¶¶ 9–17.  Signify N.V. is a holding company that simply indirectly owns the parties whose conduct is at issue in this case.  *Id.* ¶¶ 7, 9–17.  This is not a case where Signify N.V. exercises such a level of control over its subsidiaries that all of the corporations essentially fuse together into one.  *See Hargrave*, 710 F.2d at 1161.  Nor is it the case where Signify N.V. controls its subsidiaries to such an extent as to make those subsidiaries its agents.

### 3.  Signify N.V. Is Not Subject to General or Personal Jurisdiction Here

Signify N.V.'s contacts with this jurisdiction, or the United States as a whole, are not "so 'continuous and systematic' as to render [it] essentially at home in the forum." *See Daimler*, 571 U.S. at 138–139.  Stingray's only allegations attempting to tie Signify N.V. to this District are based on the activities of its subsidiaries, the Domestic Companies, here in the United States.  (First Amended Complaint, ¶¶ 19, 74.)  Further, Signify N.V. is not incorporated, nor registered to do business, in any state—it is a Dutch holding company organized under the laws of the Netherlands and headquartered there.  Ex. 1 ¶¶ 6–8.  Signify N.V. is not at home in this forum or in the United States as a whole and it would be unfair to subject it to general personal jurisdiction.

14

Stingray attempts to cure this failing by alleging that Signify N.V.'s subsidiaries' actions open it to general personal jurisdiction in this state and that their actions can be imputed to Signify N.V.  (First Amended Complaint, ¶ 19.)  However, for the reasons stated above, Signify North America Corporation and the other Domestic Companies are not Signify N.V.'s alter ego nor its agent, and thus this Court need not decide whether Signify North America Corporation would be subject to general personal jurisdiction here.[3]

With respect to personal jurisdiction, Signify N.V.'s alleged contacts with this forum, or the United States as a whole, are not related to the claims of this case.  Under Federal Circuit law, the plaintiff bears the burden of affirmatively establishing (1) whether the defendant purposefully directed its activities at residents of the forum state and (2) whether the claim arises out of or relates to the defendant's activities with the forum state.  *Celgard*, 792 F.3d at 1377–78.  In this case, Stingray fails to meet that burden for either prong.

In this case, Stingray's unsupported conclusions alleging contacts with this District fail.  First, as has been discussed, Signify N.V. does not conduct any business activities—let alone alleged "infringing activities"—in Texas or in the United States as a whole.  *See* Ex. 1 ¶¶ 6–8.  Signify N.V. does not manufacture, design, sell, or offer to sell any products.  *Id*. ¶ 7.  To the extent Signify N.V. conducts any business activities, it does so in the Netherlands, where it is incorporated and where its principal place of business is located.  *Id*. ¶ 6.  Second, Signify N.V. and its subsidiaries are wholly separate legal entities.  *See* Section II.B. above.  As has been shown,

---

[3]     In any event, Signify North America Corporation—a Delaware corporation—has no place of business in this District and venue would be improper against it regardless of whether personal jurisdiction was proper.  It is also worth noting that the Federal Circuit generally speaks of imputing the contacts of a third-party under an alter ego or agency theory in regard to *specific* personal jurisdiction, not general personal jurisdiction.  *See e.g.*, *Celgard*, 792 F.3d at 1379 ("For purposes of *specific personal jurisdiction*, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory.") (emphasis added).

Signify N.V. does not exercise the control and ownership necessary over its subsidiaries for their contacts to be imputed to Signify N.V. under either an alter ego or agency theory.  *Id*.  If Stingray wanted to sue a party over the alleged infringing activities of the Domestic Companies, then Stingray should have sued the Domestic Companies in a proper venue, not a buffet of foreign affiliates that are far removed from the allegedly infringing conduct at issue.

Third, Signify N.V. does not purposefully place the alleged infringing goods into the "stream of commerce."  Signify N.V. is a Dutch holding company that does not itself produce or sell anything.  Ex. 1 ¶¶ 6–7.  The Federal Circuit has clearly held that "the 'stream of commerce' theory is ***inapplicable***" where a defendant does not manufacture nor exercise control over the manufacture of the accused products.  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (emphasis added); *see, e.g., B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 U.S. Dist. LEXIS 220294 at *12–13 (E.D. Tex. Nov. 30, 2018) (finding no personal jurisdiction over a foreign company that did not manufacture or distribute the products at issue); *Good Sportsman Mktg. LLC v. Li & Fund Ltd.*, No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 at *9–10 (E.D. Tex. May 12, 2010) ("Where a defendant does not manufacture the accused product and does not otherwise exert control over or consort with other parties to indirectly manufacture or sell the accused product, the stream of commerce theory is inapplicable.").

The facts of this case are nothing like the facts of a normal "stream of commerce" personal jurisdiction case where an operating foreign defendant manufactures the accused products and knowingly sends them specifically into a given forum for the purpose of selling said products to the citizens of said forum.  The facts here are closer to the facts in *Red Wing, B/E Aerospace*, and *Good Sportsman Marketing*—Signify N.V. simply does not produce products and therefore, has

nothing to add to the stream of commerce.  As such, Signify N.V. has no role in putting the Accused Products into the stream of commerce and is not subject to this Court's specific personal jurisdiction.  Stingray is not left without a remedy.  There is a company that does sell the Accused Products in the stream of commerce in the United States—Signify North America Corporation.

### 4.  FRCP 4(k)(2) Jurisdiction Also Does Not Apply Here

Stingray alleges—in the alternative—that personal jurisdiction is proper under FRCP 4(k)(2).  While the due process requirements of FRCP 4(k)(2) look at a defendant's contacts with the United States as a whole, the contacts must still comport with due process.  As has been shown above, not only does Signify N.V. have insufficient contacts with Texas, it also has insufficient contacts with the United States as a whole.  Stingray alleges no separate particular facts regarding Signify N.V.'s alleged contacts with the United States or any other state.  As such, Signify N.V. is also not subject to personal jurisdiction under FRCP 4(k)(2).[4]

### B.   This Suit Must Be Dismissed For Failure to Join Signify North America Corporation, A Necessary and Indispensable Party

### 1.  Signify North America Corporation is an Indispensable Party

Separately, this suit must be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join Signify North America Corporation, whose joinder is required under Fed. R. Civ. P. 19.  Whether a party is indispensable is matter of regional circuit law.  *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:13-cv-00783-JRG, 2014 U.S. Dist. LEXIS 82429, at *6 (E.D. Tex. June 17, 2014).  The Fifth Circuit follows a two-step inquiry outlined in Rule 19 for determining whether to dismiss a case for failure to join an indispensable party.  *Id*.  "[A] Rule 12(b)(7) analysis

---

[4]      Further, to the extent that this Court finds that Signify North America Corporation is an alter ego to Signify N.V., then jurisdiction fails under FRCP 4(k)(2)(A) because Signify North America Corporation is incorporated in Delaware and has a place of business in New Jersey so Signify N.V. would be subject to personal jurisdiction in at least those places.  Ex. 1 ¶ 9.

entails two inquiries under Rule 19." *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit.

*Id.* "If joinder is warranted, then the person will be brought into the lawsuit." *Id.* "But if such

joinder would destroy the [C]ourt's jurisdiction, then the Court turns to Rule 19(b) and determines

"whether to press forward without the person or to dismiss the litigation." *Id.; see also Hood ex

rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).

      First, the district court must determine whether the party's presence is "necessary" under

Rule 19(a). *Innovative Display*, 2014 U.S. Dist. LEXIS 82429 at *6. A party is necessary under

Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing
> parties; or
> (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the
>> interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double,
>> multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). While the moving party bears the initial burden of showing that a missing

party is necessary, upon such an initial showing, the burden of disputing the initial showing falls

on the opposing party. *Hood*, 570 F.3d at 628. Further, the court "may go outside the pleadings

and look to extrinsic evidence such as documents or affidavits" when considering a Rule 12(b)(7)

motion. *Timberlake v. Synthes Spine, Inc.*, No. V-08-4, 2011 U.S. Dist. LEXIS 70894, at *5 (S.D.

Tex. June 30, 2011) (internal quotation omitted).

      Signify North America Corporation is plainly a necessary party to this lawsuit. The Fifth

Circuit has recognized that when "the subsidiary was the primary participant in the events giving

rise to the lawsuit," "[f]ailure to join the subsidiary in such circumstances would be improper."

*Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981). As the Fifth Circuit also

recognized in *Freeman v. Northwest Acceptance Corp.,* when the plaintiff seeks to impose liability on an entity for the acts of another, (as here, where Stingray attempts to impose liability on Signify N.V. for Signify North America Corporation's US operations), that subsidiary becomes an "active participant" and "joinder of the subsidiary is required".  754 F.2d 553, 559 (5th Cir. 1985).

Signify North America Corporation is named in the First Amended Complaint over fifty times and is described as the source of Defendants' "corporate presence in the United States" (First Amended Complaint, ¶ 8), as "registered to do business in Texas" and providing a place of business in Texas (*id.*), as receiving Signify products shipped by the Defendants (*id.*), as the party that distributes, offers for sale, and sells the accused products in the United States "on behalf of the Signify group" (*id.*), as Signify's "significant business presence" in the U.S. (*id.* ¶ 16), and as managing all of Signify's N.V.'s North America operations.  (*Id.* ¶ 19.)  Stingray argues that Signify N.V. has committed acts of direct and/or indirect infringement "through direction and control of its subsidiaries," specifically including Signify North America Corporation.  (*Id.*)  The failure to name those subsidiaries as defendants, on whose conduct the alleged infringement of the named Defendants is expressly predicated, is fatal to Stingray's First Amended Complaint under Rule 19.

A party is also necessary when it controls critical sources of evidence.  *See Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 397-98 (5th Cir. 1978) (holding that a party was necessary when its "presence is critical to the disposition of the important issues in the litigation.  [Its] evidence will either support the complaint or bolster the defense.").  Because, as Stingray acknowledges in its Complaints, Signify North America Corporation manages all North American operations of the Signify Group, it is plain that its documentary evidence, witnesses, and financial information will be critical to the parties' claims and defenses in this case.  Stingray

has expressly put the conduct and activities of each of the Domestic Companies at issue in the case by naming them as the alleged alter egos of the other Defendants.

### 2. Signify North America Corporation is Not Subject to Venue in this District

Upon finding a party necessary, a district court must determine whether joining the necessary party would destroy subject matter jurisdiction or if the joinder is infeasible for other reasons.  Fed. R. Civ. P. 19; *GTG Holdings, Inc v. Amvensys Capital Grp., LLC*, No. 3:13-cv-3107-M, 2015 U.S. Dist. LEXIS 101370, at *5 (N.D. Tex. Aug. 3, 2015); *Innovative Display*, 2014 U.S. Dist. LEXIS 82429 at *7.  Under Rule 19, joinder is not feasible: (1) when venue is improper; (2) when the absentee is not subject to personal jurisdiction; and (3) when joinder would destroy subject matter jurisdiction.  *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005); *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986).

None of the Domestic Companies, including Signify North America Corporation, are alleged to be incorporated in Texas or to have a place of business in this District.  Under *TC Heartland*, they are therefore not subject to venue in this District under 28 U.S.C. § 1400(b).  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017).  Because joinder of the Domestic Companies is infeasible due to the impropriety of venue against those parties, the Court must determine, "whether the party is indispensable, that is, whether litigation can be properly pursued without the absent party." *Innovative Display*, 2014 U.S. Dist. LEXIS 82429 at *7.  Rule 19(b) lays out the relevant factors for determining whether a party is indispensable:

> The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate;

and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  Generally, "[i]f a judgment would preclude an absent party from enforcing [its] rights or injuriously affect them, that party is indispensable."  *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

According relief to Stingray in Signify North America Corporation's absence would significantly prejudice Signify North America Corporation, which Stingray alleges has manufacturing sites and sales contracts in the United States for the Accused Products.  The prejudice to Signify North America Corporation cannot be lessened or avoided by measures of this Court including protective provisions and shaping the relief.  Specifically, and as admitted by Stingray in its First Amended Complaint, every named Defendant has an alleged direct connection to Signify North America Corporation, as such, any judgement affecting a Defendant will directly affect Signify North America Corporation.  Stingray requests, in its prayer for relief, a "judgment that Defendants have infringed the Asserted Patent . . . directly and/or indirectly by way of inducing infringement of such patents", which relief could not be fully rendered against the named Defendants without also impinging on Signify North America Corporation's right to manufacture and sell the Accused Products.  (First Amended Complaint, ¶ 121.)  Stingray has ample opportunity to obtain an adequate remedy if the action was dismissed for nonjoinder.  For example, Stingray could obtain relief from the New Jersey Court where a co-pending case with identical patents is pending, and where jurisdiction is proper over all parties, and where all indispensable parties are already a named Plaintiff and named Defendant.

Accordingly, the present action should be dismissed for failure to name Signify North America Corporation an indispensable party to the present action.  Moreover, Stingray will suffer no prejudice in obtaining a proper remedy if this Court were to dismiss the present action.

### C.    The First-to-File Rule Requires Dismissal or Transfer of this Action

The first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases" and where "the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corporation*, 824 F.3d 982, 984 (Fed. Cir. 2016); *See also Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985).  "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied—'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'"  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).  In patent litigation, the first to file action is preferred, even if it is declaratory.  *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)), abrogated on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

Other courts faced with similar facts have concluded that an amended complaint (filed after a competing declaratory judgment complaint) that does not relate back to the original complaint under Rule 15 with respect to newly-added defendants is the second-filed complaint.  *Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122, 131-32 (S.D.N.Y. 2003) (finding that an amended complaint filed after a declaratory judgment complaint that did not relate back to the filing of the original complaint with respect to newly added parties is treated as the second-filed complaint); *Mallinckrodt Medical Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) (declining to relate an amended complaint back for first-to-file purposes where the only defendant in first complaint was dismissed for lack of personal jurisdiction and where the "undisputed facts

suggest that Mallinckrodt did not make a mistake within the meaning of Rule 15(c) but proceeded as it did as a strategic act"); *see also  Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 91358, at *11 (N.D. Ind. 2006) (finding that an amended complaint filed after a declaratory judgment complaint did not relate back to the filing of the original complaint with respect to parties newly added in the amended complaint).

### 1.   The Other Signify Defendants Could Not Have Concluded That They Were Omitted from the Original Complaint by Mistake

An amended complaint is not first filed with respect to added parties when it does not "relate back" to the originally filed complaint.  Fed. R. Civ. P. 15(c); *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 U.S. Dist. LEXIS 9971, at *28 (E.D. Tex. Jan. 24, 2017).  Under Rule 15, an amendment to change the parties against whom a claim is asserted relates back to the date of the initial pleading *only* when, within the statutorily prescribed period, the parties to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) (explaining that the newly added parties' state of mind governs the latter inquiry).

When a plaintiff fails to meet this burden, the plaintiff's amendment adding claims against such defendants do not relate back under Rule 15(c).  *Priester v. Deutsche Bank Nat'l Tr. Co.*, No. 4:16-CV-449, 2017 U.S. Dist. LEXIS 102615, at *12-13 (E.D. Tex. June 30, 2017); *see also Tapp v. Shaw Envtl., Inc.*, 401 F. App'x 930, 934 (5th Cir. 2010) (per curiam) (finding plaintiff's failure to "provide[] any evidence that [newly named defendant] had actual knowledge or should have been aware that it was an intended party to the suit" precluded relation back of the claim against the newly named defendant).

"The Fifth Circuit has interpreted Rule 15(c)(1)(C) to refer 'only to substituting or changing a defendant rather than adding a new defendant,' except in instances involving misnomer of a defendant." *Bayway Lincoln Mercury, Inc. v. Universal Underwriters Ins. Co.*, No. H-19-3817, 2020 U.S. Dist. LEXIS 248125, at *10-11 (S.D. Tex. Dec. 4, 2020) (*citing Tapp*, 401 F. App'x  at 932) (other citations omitted).  Furthermore, "Rule 15(c)(1)(C) does not apply if a plaintiff has knowledge of the new defendant and the new defendant's involvement in the case when the complaint was first filed." *Bayway Lincoln Mercury*, 2020 U.S. Dist. LEXIS 248125, at *10-11 (citations omitted).

Plaintiff has not argued (and cannot argue) that the new Signify Defendants *actually* knew that the action would have been brought against them, but for a mistake concerning the proper party's identity.  Neither can Plaintiff argue that the new Signify Defendants "should have known" this.  The purpose of Rule 15 is "to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (*cited by Clark v. Thompson*, No. 20-10568, 2021 U.S. App. LEXIS 6819, at *8 (5th Cir. Mar. 9, 2021) ("Where there is no mistake, . . . 'relation back should not be allowed.'")).  Courts in this Circuit regularly find that failing to identify individual defendants cannot be interpreted as a mistake and as such, fails to relate back.  *See Winzer v. Kaufman Cty.*, 916 F.3d 464, 470 (5th Cir. 2019) (finding that an amendment did not relate back when it added the correct names for "John Doe" defendants whose names were unknown to Plaintiff at the time of filing the original complaint), *cert. denied*, 141 S. Ct. 85 (2020); *Woodhouse v. Bird Rides, Inc.*, No. SA-20-CV-01113-XR, 2021 U.S. Dist. LEXIS 93804, at *7 (W.D. Tex. May 17, 2021) ("Where a plaintiff could have obtained the proper identities of intended defendants by greater diligence, failing to identify a party defendant until

discovery untimely reveals it is not a 'mistake' or 'misidentification' for purposes of the relation back doctrine under Rule 15(c).") (citations omitted); *Myers v. Broadus*, No. 6:16-cv-1130, 2019 U.S. Dist. LEXIS 28260, at *20 (E.D. Tex. Feb. 22, 2019) (finding the addition of new defendants after receiving additional discovery cannot be characterized as a mistake under Rule 15(c)).  In any event, Stingray's lack of pre-suit diligence before filing its Original Complaint cannot be characterized as a "mistake" since the information that Stingray relies on now regarding the newly added Defendants was publicly available at the time of its Original Complaint.

The Original Complaint provided no suggestion that would indicate to any of the newly added Defendants that they should have been properly named as Defendants in the original action and that their omission was by mistake, rather than intentional.  The Original Complaint expressly acknowledged that Signify N.V. "operates in many countries via its subsidiaries and affiliated companies" by citing Signify N.V.'s annual report, which listed the full legal names and principal country of business of *every* Defendant it now attempts to add as a party to this action.  (ECF No. 1 ¶ 4 (citing Annual Report 2019, SIGNIFY, at 2)); *cf. Kemp Indus. v. Safety Light Corp.*, 1994 U.S. Dist. LEXIS 21466, *49 (D.N.J. 1994) (finding that a "failure to name [a defendant] in spite of the ease of discovering [defendant's] potential liability reasonably indicates [defendant] was intentionally omitted from the Complaint") (citation omitted)).  Each of those Defendants, even if they had access to the Original Complaint, could not have been expected to conclude that their omission from the Original Complaint was by mistake rather than an intentional omission given the fact that their identities were plainly ascertainable to, and actually known by, Plaintiff.

Instead, the factual allegations related to Signify N.V.'s allegedly infringing conduct in the United States and in this District would lead a reasonable reader of the Original Complaint to conclude that Signify North America Corporation was the necessary party that should have been

accused of infringement in that Complaint but that it was intentionally (not mistakenly) omitted from the Complaint.  For example, the Original Complaint acknowledged that Signify North America Corporation "manages [Signify's] North America operations[,] is based in the United States, [and] has offices in Texas."  (ECF No. 1 ¶ 9.)  Stingray further alleged that "[t]hrough direction and control of **its subsidiary**, Signify has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere in the United States . . ." (*Id.* (emphasis added, referring to Signify North America Corporation as "its subsidiary").)

Stingray also alleged in the Original Complaint that Signify (1) was "maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, including via Signify [North America Corporation] and WiZ," (2) "does business in the U.S., the state of Texas, and in the Eastern District of Texas," and (3) "has significant ties to, and presence in, the State of Texas and the Eastern District of Texas."  (*Id.* ¶¶ 6, 16.)  The Original Complaint and First Amended Complaint both allege that Signify "has seven manufacturing sites in the United States," each of which are owned and operated by Signify North America Corporation.  (ECF No. 1 ¶ 4; First Amended Complaint, ¶ 11.)  Because each of these allegations plainly relate to the activities and business presence of Signify North America Corporation—the same company that Stingray claimed in each of its Complaints manages all of Signify's North America operations but did not name as a defendant—it would be unreasonable to conclude that foreign corporations with no meaningful connections to the United States should have concluded that they, instead, were mistakenly omitted as defendants from the original suit.  Especially, when those parties were *added* as new Defendants rather than substituted in for the original Defendant.  *See Bayway Lincoln Mercury*, 2020 U.S. Dist. LEXIS 248125, at *10-11.

Importantly, the fact that the Complaint expressly identifies that the Philips Hue app on the

26

Google Play Store as being offered by "Signify Netherlands B.V." further indicates that Stingray's failure to name Signify Netherlands B.V. as a defendant in that Complaint was intentional and was not due to mistake or misnomer.  (ECF No. 1 ¶ 12.)  No allegations regarding shipping allegedly infringing imports from Poland, the Netherlands, or Hong Kong are found within the Original Complaint.  Neither are allegations regarding applications for FCC product registrations out of China.  These newly-raised allegations in the First Amended Complaint regarding newly-named Defendants could never have been foreseen from the Original Complaint.

### 2.   The District of New Jersey is the First-Filed Case and This Dispute Should Be Tried There

"[T]he ultimate decision 'to apply the first-to-file rule is discretionary, and involves determinations concerning 'wide judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *In re Toyota Hybrid Brake Litig.*, No. 4:20-cv-127, 2020 U.S. Dist. LEXIS 194964, at *22 (E.D. Tex. Oct. 21, 2020) (quoting *Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993) (brackets omitted)).  In determining whether the rule applies, "the crucial inquiry" is substantial overlap. *Save Power*, 121 F.3d at 951.  Once the second-filed court has determined there is substantial likelihood of overlap between the two pending cases, the role of deciding whether the substantially similar issues should proceed should be decided by the first-filed court, unless there are compelling circumstances that justify retaining jurisdiction.  *See, e.g.*, *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 606 (5th Cir. 1999); *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 633-34 (W.D. Tex. 2018).

### a.   The District of New Jersey Case and the Newly Filed First Amended Complaint Substantially Overlap

In deciding whether substantial overlap exists, the Fifth Circuit has looked to factors such as whether "the core issue . . . was substantially the same" or if "much of the proof adduced . . .

would likely be identical." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (citation omitted) (alterations in original).  However, "the cases need not be exactly the same, and '[c]omplete identity of the parties is not required.'"  *Save Power*, 121 F.3d at 951.  Here, substantial overlap exists between both cases.

The District of New Jersey action and the present actions substantially overlap for at least the following three reasons.  First, the patents-in-suit in the New Jersey action perfectly mirror the patents in the present Eastern District of Texas Actions.[5]  Courts in this District routinely find substantial overlap when even patents merely pertain to the same technology or share common inventors.  *See e.g.*, *Amberwave Systems Corp. v. Intel Corp.*, 2005 U.S. Dist. LEXIS 30010 at *4- 5 (E.D. Tex. Nov. 1, 2005); *E-Z-EM, Inc. v. Mallinckrodt, Inc.*, No. 2-09-cv-124, 2010 U.S. Dist. LEXIS 31419, at *5 (E.D. Tex. Feb. 26, 2010).

Second, the accused products are identical in the two actions.  Indeed, the New Jersey Complaint recites as noninfringing the same products accused of infringement by Stingray in its Original Complaint.  *See e.g., Signify N. Am. Corp. v. Stingray IP Solutions*, Case No. 3:21-cv- 11989, ECF No. 1 at ¶¶ 36, 46, 56, 66, 76, 86, 96 (D.N.J.).  Courts routinely find overlapping technology as relevant to the inquiry of whether substantial overlap exists.  *See e.g.*, *SIPCO, LLC v. Emerson Elec. Co.*, No. 6:15-cv-907, 2016 U.S. Dist. LEXIS 191202, at *10-11 (E.D. Tex. July 1, 2016); *Chan v. Brother Int'l Corp.*, No. 4:02-CV-1022-A, 2003 U.S. Dist. LEXIS 9040, at *7- 8 (N.D. Tex. May 28, 2003).

Lastly, the parties overlap in part.  Stingray is a party to both the New Jersey action and

---

[5]     US 6,958,986; US 6,961,310; and US 7,027,426 are asserted in Civil Action No. 2:21-cv- 00043-JRG (E.D. Tex.). US 7,082,117; US 7,224,678; US 7,440,572; and US 7,616,961 are asserted in Civil Action No. 2:21-cv-00044-JRG (E.D. Tex.). US 6,958,986; US 6,961,310; US 7,027,426; US 7,082,117; US 7,224,678; US 7,440,572; and US 7,616,961 are collectively identified in Civil Action No. 3:21-cv-11989 (D.N.J.).

the present action.  While Signify North America Corporation is not a party to the present action, it is alleged to be an "alter ego" of all of the Defendants in this action, and its interests will clearly be affected by both suits, as it controls all sales of the Accused Products in the United States. Regardless, perfect overlap in named parties is not required for a finding of substantial overlap when the suits "overlap on the substantive issues."  *Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").

### b.  No Compelling Circumstances Exist to Maintain the Eastern District of Texas Actions

Absent compelling circumstances, the first court in which jurisdiction attaches has priority to consider a case.  *In re N. Am. Oil & Gas Co.*, 130 B.R. 482, 483 (Bankr. W.D. Tex. 1991) (citing *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)).  As explained above, jurisdiction did not attach with the filing of the Original Complaint in this case because Signify N.V. is not subject to personal jurisdiction, and the case pending in the District of New Jersey is therefore the first-filed case.

No compelling circumstances exist that would justify retaining jurisdiction in this unrelated forum over the District of New Jersey.  Rather, the considerations that underly the first-to-file doctrine compel the conclusion that the case should instead proceed in New Jersey.  Indeed, all of the *Volkswagen* factors either support transfer or are neutral.  For example, on information and belief, there are no relevant inventors or Signify employees in this District, nor are any other third parties with relevant information believed to reside in this District.  As such, all key witnesses will have to travel to this District, whereas many of the relevant witnesses expected to testify at trial are already located in New Jersey.  Moreover, the bulk of evidence relevant to the alleged infringement is expected to be at Signify North America Corporation's headquarters in New

Jersey.  Upon information and belief, little to no evidence is in this District.  The District of New Jersey has a local interest in adjudicating an action that will affect a large corporation located in its district that employs thousands of people and provides education and training facilities with respect to the Accused Products, whereas Stingray's status as a non-practicing entity means that there is very little local interest in the outcome of this case in this District.

## IV.    CONCLUSION

Stingray is ignoring the facts and playing games to circumvent established venue law.  This Court should not endorse these unconcealed acts of venue shopping and should dismiss this case. For the above reasons, the Court should dismiss this case against Signify N.V. for lack of personal jurisdiction.  Signify N.V. lacks sufficient minimum contacts with Texas and the United States as a whole, and an exercise of jurisdiction over Signify N.V. would offend due process.  Stingray knew when it filed this case that Signify North America Corporation would be the proper (and indispensable) entity to sue, but it also knows that venue is not proper against Signify North America Corporation in this District.  Because Signify North America Corporation is an indispensable party and is not subject to suit here, the entire case must be either dismissed or transferred to the District of New Jersey to join the currently pending case.  Lastly, and in the alternative, the first-to-file rule and judicial economy also requires this Court to dismiss this case in favor of the substantially overlapping suit filed by Signify North America Corporation in the District of New Jersey.

Dated: June 28, 2021

Respectfully submitted,

_/s/ Michael J. Newton_

Michael J. Newton (TX Bar No. 24003844)
Brady Cox (TX Bar No. 24074084)
Adam Ahnhut (TX Bar No. 24106983)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Telephone:  214.922.3443
Facsimile:  214.922.3843
Email:  mike.newton@alston.com
Email:  brady.cox@alston.com
Email:  adam.ahnhut@alston.com

Adam D. Swain (DC Bar No. 492063)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:  202.239.3300
Facsimile:  202.239.3333
Email:  adam.swain@alston.com

Lauren N. Griffin (NC Bar No. 54766)
**ALSTON & BIRD LLP**
One South at The Plaza
101 S Tryon St, Suite 4000
Charlotte, NC 28280
Telephone:  704.444.1059
Facsimile:  704.444.1111
Email:  lauren.griffin@alston.com

***Attorneys for Defendant Signify N.V.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 28th day of June, 2021.

*/s/  Michael J. Newton*
Michael J. Newton
